# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JEFFREY JOHN MARBURGER,**

    **Plaintiff,**

**v.**              **Case No: 6:13-cv-416-Orl-31KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

  This cause came on for consideration without oral argument on the Complaint filed by Jeffrey John Marburger seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration ("SSA"). Doc. No. 9, 10. The parties have also filed their respective memoranda of law. Doc. Nos. 16, 19. The matter has been referred to the undersigned for issuance of a Report and Recommendation.

## PROCEDURAL HISTORY.

  In 2010, Marburger applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Program ("OASDI"), 42 U.S.C. § 401 *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C.

§ 1381 *et seq.* (sometimes referred to herein as the "Act").   He alleged that his disability began on September 5, 2009.   R. 121, 130.

Marburger's applications were denied initially and on reconsideration. At Marburger's request, an Administrative Law Judge ("ALJ") held a hearing.   Marburger (accompanied by his attorney) and a vocational expert ("VE") testified at the hearing.   R. 27-55.

After considering the hearing testimony and the evidence of record, the ALJ found that Marburger was insured under OASDI through September 30, 2014.   The ALJ found that Marburger had not engaged in substantial gainful activity since the alleged disability onset date. R. 17.

The ALJ found that Marburger had lumbar degenerative disk disease, sensorineural hearing loss and necrotizing pancreatitis, which were severe impairments.   These impairments did not meet or equal any listed impairment.   R. 17.

The ALJ found that Marburger had the residual functional capacity ("RFC") to do the following:

> [T]o lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday, and stand and/or walk for six hours in an eight-hour workday with an opportunity to alternate every 30 minutes between sitting and standing. The claimant can occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds and can tolerate moderate (level 3) environmental noise. The claimant cannot tolerate concentrated exposure to vibration.

R. 18.   After considering the testimony of the VE, the ALJ found that Marburger could return to his past relevant work as a sales representative of building equipment as that job is normally performed.   R. 21. Therefore, the ALJ found that Marburger was not disabled. *Id.*

Marburger asked the Appeals Council to review the ALJ's decision.   R. 10.   On March 5, 2013, the Appeals Council found no reason to review the ALJ's decision.   R. 1-3.

Marburger seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Marburger having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).  A court's review of a final decision of the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the ALJ's decision and the parties' memoranda.  Accordingly, I will only summarize facts necessary to address the issues raised in order to protect Marburger's privacy to the extent possible.

Marburger was born in 1961.  He completed high school.  R. 45.

Marburger previously worked as a salesman in wholesale construction. R. 30.  He traveled to manufacturers of cabinets and millworks to sell high-end plywood.  R 31. This job required him to lift at least 80 pounds.  R. 32. He had to walk 1-2 hours, stand 2 hours, and sit 7-8 hours. R. 173, 184. The VE classified this job as sales representative, building equipment and supplies, *Dictionary of Occupational Titles* ("DOT") 274.357-018, a light exertional job as defined in the DOT but medium to heavy exertion as performed.  R. 51.

On August 6, 2009, Marburger injured his back at work resulting in left-sided back pain radiating into his left leg.  R. 234. The initial diagnosis was lumbar strain with left radiculopathy. R. 236.  Marburger participated in physical therapy but it did not improve his condition.  R. 239,

257-61, 273, 275-91, 324-39. Medication helped lessen the pain but did not relieve it entirely.  R. 241.

An MRI of the lumbar spine taken on September 2, 2009 revealed a small central disc protrusion at L4-5 and L5-S1 with a minimal disc bulge at L3-4. R. 306.

Albert Gillespy, M.D., examined Marburger on October 14, 2009.  Marburger complained of a sharp, stabbing pain in his lower back with radiculopathy into the left leg at a level of 6 to 10 on a 10-point pain scale.  R. 262. Upon examination, Dr. Gillespy noted point tenderness with limited range of motion and mobility, generalized weakness of the left leg, and an antalgic gait. R. 263.

On November 11, 2009, Marburger continued to complain of radiating back pain.  Dr. Gillespy's diagnoses were acute lumbar strain syndrome, L3 to S1 degenerative disc disease, osteoarthritis and mild left-sided sciatica.  Upon examination, Dr. Gillespy observed tenderness in the lower lumbar spine without significant spasm.  A straight-leg raising test was positive on the right and the left.  Dr. Gillespy indicated that Marburger could perform modified duty with no lifting greater than 20 pounds.  R. 271.

A CT of the lumbar spine taken on November 24, 2009 revealed degenerative changes at L4-5 and L5-S1 with mild-to-moderate and moderate left foraminal encroachment.  R. 245-46.

During a follow-up visit on December 4, 2009, straight-leg raising tests were positive for pain.  Dr. Gillespy found that Marburger had reached maximum medical improvement ("MMI"). He indicated that no further medical treatment was anticipated.  R. 266.

Jeffrey P. Rosen, M.D., an orthopedic surgeon[1], examined Marburger on December 30, 2009 at the request of his workers' compensation carrier. Marburger reported that his pain had gotten worse over time. He complained of constant left lower extremity sciatica at a level of 8 on a 10-point pain scale. R. 292. Upon examination, Dr. Rosen observed tenderness to palpation over the lower lumbar spine with significant restricted range of motion, and sciatic stretch signs produced significant discomfort. He noted that an MRI showed a small left-sided disc herniation at L4-5. He recommended epidural steroid injections. R. 293. He allowed Marburger to return to very light duty work with no bending, kneeling, squatting, twisting, climbing, prolonged standing, prolonged sitting or lifting greater than 10 pounds. Dr. Rosen believed that Marburger had not yet reached MMI. R. 294.

Marburger did not respond favorably to epidural steroid injections. Dr. Rosen referred him to a spine surgeon on March 24, 2010. R. 295.

Stephen R. Goll, M.D., a board certified orthopedic surgeon[2], examined Marburger on April 14, 2010. Marburger indicated that about 4 to 6 weeks before the appointment he had a sudden increase in weakness in his left foot with difficulty raising the foot, and numbness and pain in his left leg. R. 297. Upon examination, Dr. Goll noted tenderness in the left sacroiliac with limited range of motion on flexion and extension. *Id.* Straight-leg raising tests were negative. R. 298. X-rays revealed mild degeneration at L4-5 and L5-S1. Dr. Goll noted that the September 2009 MRI showed a small disc protrusion at L4-5. Dr. Goll requested an updated

---

[1] *Is My Doctor Board Certified?*, found online at https://www.Certificationmatters.org/is-your-doctor-board-certified/search-now.aspx (last visited Feb. 3, 2014).

[2] *Is Your Doctor Board Certified?*, found online at https:www.certificationmatters.org/is-your-doctor-board certified/search-now.aspx (last visited Feb. 3, 2014).

MRI and an EMG of Marburger's left lower extremity.   R. 299.   He recommended that Marburger continue with the same light-duty restrictions assigned by Dr. Rosen.   He also recommended that Marburger continue use of hydrocodone and also prescribed Mobic and Soma.   R. 300.

An MRI of the lumbar spine taken on May 4, 2010 showed mild degenerative disc disease and arthritis from L3-4 through L5-S1 with small disc protrusions at L4-5 and L5-S1.   There was no significant spinal or foraminal stenosis or visible neural impingement.   R. 307.

On May 5, 2010, Marburger returned to Dr. Goll.   Dr. Goll noted that the MRI taken the previous day showed mild degenerative disc disease from L3-4 through L5-S1 with small disc protrusions. Upon examination, Dr. Goss noted tenderness to palpation in the lumbar spine with diminished range of motion on flexion.   Sensation was also diminished on the left at L4 through S1.   Motor strength had improved.   His diagnoses were lumbar herniated nucleus pulposus at L4-5 without evidence of neural impingement and persistent left lower extremity weakness.   R. 301.   Dr. Goss indicated that surgical intervention was not warranted, but he wanted to see the results of an EMG test.   He continued Marburger on the same restrictions with the same medication.   R. 301-02.

Dr. Goll saw Marburger again on May 19, 2010 to review the EMG results, which were normal.   Dr. Goll could provide no other suggestions to help Marburger and concluded that Marburger had reached MMI.   R. 303.   Dr. Goll found that Marburger had a 5% permanent partial impairment due to disc changes.   He kept his work restrictions the same as previously, indicating that they would be permanent.   He continued Marburger on Soma and hydrocodone.   R. 304.

On September 9, 2010, David Guttman, M.D., prepared a physical RFC assessment based on review of Marburger's records.  Dr. Guttman opined that Marburger could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He could sit, stand or walk about 6 hours in an 8-hour workday.  He could occasionally engage in postural activities but never climb ladders, ropes or scaffolds.  He should avoid concentrated exposure to vibration and hazards.  R. 384-91.

On September 27, 2010, Jane A. Burns, Au.D., performed a complete audiological examination on Marburger.  Testing revealed a mild sensorineural hearing loss in his left ear and moderately severe to severe sensorineural hearing loss in his right ear.  Dr. Burns indicated that Marburger had difficulty hearing in many situations but particularly when there was competing noise, when the sounds were coming from the right side, and when he could not face the speaker. R. 393.

On January 16, 2011, Marburger sought treatment at Halifax Health emergency department for extremely tense abdominal pain with nausea and vomiting.  R. 440, 449.  A CT scan showed what appeared to be pancreatitis.  R. 441. A laparoscopic cholecystectomy to remove Marburger's gallbladder was performed on January 21, 2011.  R. 445-46.

On January 29, 2011, Marburger sought treatment at Halifax Health emergency room.  He complained of abdominal pain with some nausea, diarrhea, constipation and chills. R. 407, 417.  Examination was positive for tenderness on deep palpation of the abdomen.  His gait was steady.  R. 407-08.  Radiology tests revealed an abnormal pancreas with presumed pancreatic necrosis.  R. 437.  Marburger also sought medication for chronic back pain.  He admitted that he was buying pain medication off the street.  R. 407-08.  He was treated with IV Dilaudid and a proton pump inhibitor.  R. 408.

On February 3, 2011, Marburger was again examined at Halifax Health emergency room complaining of abdominal pain. R. 413. Tenderness on palpation of the abdomen was noted. R. 414. There was mild lumbar paraspinal tenderness without trigger points and had give-way weakness in the left leg. He was observed to walk a few steps without limping. R. 415. The treating professional, Carmen L. Dominguez, M.D., found that the physical findings were out of proportion to Marburger's complaints of chronic back pain. R. 415. She administered morphine and recommended that Neurontin be considered once his abdominal pain resolved. R. 415-16.

Marburger returned to the Halifax Health emergency room on February 5, 2011. R. 410. An imaging study showed decreased blood flow to the pancreas with findings consistent with pancreatitis. R. 411.

Marburger sought hospital treatment on February 7, 2011 for recurrent pancreatitis. He was experiencing intermittent abdominal pain without fevers, nausea, vomiting, diarrhea or constipation. R. 395. He was discharged with pain medication. R. 396.

On March 17, 2011, Marburger again sought treatment for abdominal pain with nausea and vomiting without diarrhea. R. 528, 531. The assessment of the treatment provider was gastritis, reflux esophagitis, exacerbation of chronic pancreatitis, peptic ulcer disease and drug-seeking behavior. R. 534.

Marburger sought treatment again in June 2011 for epigastric pain and chronic back pain. Abdominal tenderness was noted on examination. R. 545. A CT scan of the abdomen taken on June 30, 2011 showed improvement from the previous study of February 2011. R. 548.

At the ALJ's hearing, Marburger testified that he had pain in his lower back and left leg with any activity. R. 32. The leg was weak, and leg pain had a tendency to make him limp. R. 34. He also had difficulty moving the last 3 toes on his left foot. R. 34. He estimated that he

could sit for 15 to 20 minutes and stand for even less time. He could walk about 2 blocks. He could lift 10 to 15 pounds if he did not need to bend over to pick up the object. R. 35. He estimated that he could lift up to 10 pounds. R. 36. Pain medication did not give him much relief. R. 37, 46. Medications caused a little bit of dizziness and drowsiness. R. 37. He had no insurance. R. 49.

Due to hearing loss, he sometimes could not hear his customers. R. 39.

Pancreatitis caused him to have diarrhea multiple times every day and vomiting about every day. When he ate, he had stomach cramps and nausea. R. 40, 46. He was losing weight. R. 43.

During a typical day, he spent about 14 hours a day sitting in a recliner. R. 45. He sometimes fell asleep during the day which made it difficult for him to sleep at night. R. 44. He could not bend, kneel, squat, twist or climb. R. 45, 47. He cleaned up after himself in the bathroom. R. 42.

The ALJ asked the VE to assume a hypothetical person of Marburger's age, education and past work experience with the following limitations:

> [L]imited to lifting and carrying 20 pounds occasionally, ten pounds frequently; sit, stand, walk for six hours in an eight-hour workday, 30-minute sit/stand option; the occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds; have occasional balancing, stooping, kneeling, crouching, crawling; should not have concentrated exposure to vibrations; noise level for the environment should be three. I think that's moderate.

R. 51. The VE testified that this hypothetical person could perform Marburger's past relevant work as a sales representative, building equipment and supplies as defined in the DOT. R. 51-52. An employer would theoretically tolerate 1 day or less per month absence from work. R. 52.

Marburger's attorney asked the VE to assume a hypothetical person of Marburger's age, education and work experience would could not bend, kneel, squat, twist, climb, lift greater than 10 pounds and who could not engage in prolonged standing or sitting.  The VE testified that this hypothetical person could not return to Marburger's previous work.  R. 53.

## ANALYSIS.

Marburger asserts two assignments of error:  (1) that the ALJ erred by failing to give significant weight to the opinions of Dr. Rosen and Dr. Goll; and (2) that the ALJ did not properly apply the pain standard.  These are the only issues I will address.[3]

*Weight Given to the Opinions of Dr. Goll and Dr. Rosen.*

The law of this circuit requires that the testimony of a treating physician be given substantial or considerable weight unless good cause is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).  When the ALJ concludes that the opinion of a treating physician is not entitled to significant weight, the ALJ must articulate specific reasons for failing to give the opinion significant weight and those reasons must be supported by substantial evidence.  *Id.* (citations omitted).  Seeing a claimant 3 times and conducting tests no other doctor conducted may qualify a doctor as a treating physician.  *See Morrison v. Astrue*, No. 08-80886-CIV, 2009 WL 3295113, at *21-22 (S.D. Fla. Oct. 13, 2009) (and cases cited therein).

Dr. Goll is a board certified orthopedic surgeon.  He examined and treated Marburger on 3 occasions from April 14, 2010 through May 19, 2010.  He requested an updated MRI and an

---

[3] The parties were advised in the Scheduling Order that issues not specifically raised may be waived.  Doc. No. 11 at 2.

EMG study, the latter of which had not been conducted by another physician.   Therefore, Dr. Goll qualifies as a treating physician.   The Commissioner does not argue to the contrary.   It appears that Dr. Rosen saw Marburger only twice.   It is not necessary to determine whether Dr. Rosen is also a treating physician because Dr. Goll adopted Dr. Rosen's functional capacity findings.   Accordingly, I address the treating physician argument as it relates to Dr. Goll's opinion.

The ALJ gave little weight to Dr. Goll's functional capacity limitations finding that the extreme limitations were not consistent with Marburger's testimony about his abilities. R. 20-21.   The only testimony the ALJ cites in this regard is Marburger's testimony that he could lift 10 to 15 pounds, sit 15 to 20 minutes, stand for less than 15 minutes, walk 2 blocks, watch television and clean the toilet when necessary.   R. 18.   This testimony is not inconsistent with Dr. Goll's RFC assessment except that Marburger indicated he could lift 15 pounds rather than the 10 pounds in Dr. Goll's functional limitations assessment.

The ALJ also discounted the opinion of Dr. Goll because it was not consistent with other medical evidence of record. To the contrary, Dr. Goll adopted the functional capacity assessment previously rendered by Dr. Rosen, who is also an orthopedist. The specialty of Dr. Guttman, the reviewing physician to whom the ALJ gave significant weight, is not listed in the record.   It appears, however, that he is board certified in pediatrics.   *See Maudlin v. Comm'r of Soc. Sec.*, No. 6:08-cv-47-Orl-22DAB, 2009 WL 377170, at *4 (M.D. Fla. Feb. 12, 2009).   SSA regulations state that more weight will be given to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist.   See 20 C.F.R. § 404.1527(c)(5).   Drs. Goll and Rosen are specialists in the area of orthopedics while Dr. Guttman is not.

Finally, the ALJ discounted the opinion of Dr. Goll because it was based only on Marburger's back condition, not on his other impairments. R. 21. Neither Dr. Goll, nor Dr. Rosen, were asked to render opinions on Marburger's functional ability based on impairments from necrotizing pancreatitis nor would it have been reasonable for them to do so in light of their area of specialization. Therefore, this statement also does not provide good cause for rejecting the opinion of Dr. Goll, who adopted the opinion of Dr. Rosen, regarding what Marburger's limitations would be due to his back injury with pain and weakness in his left leg.

The ALJ did not state good cause supported by substantial evidence in the record for rejecting Dr. Goll's opinion, which was supported by the opinion of Dr. Rosen, about Marburger's functional limitations arising from his back and leg problems. The ALJ's RFC assessment requires exertional activity well beyond that stated in Drs. Goll and Rosen's opinions. For these reasons, the first assignment of error is well taken. Therefore, reversal of the Commissioner's decision and remand for further proceedings is warranted.

*Pain Standard.*

In this Circuit, when a claimant presents subjective testimony of pain or other nonexertional limitations, the ALJ must first determine whether there is evidence of an underlying medical condition and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). If the ALJ decides not to credit the claimant's testimony about pain and other subjective symptoms, the ALJ must articulate specific and adequate reasons for discrediting the testimony. *Id.* at 1561-62.

The ALJ found that Marburger's medically determinable impairments could reasonably be expected to cause the symptoms he testified about, but that his testimony was not credible to the extent it was inconsistent with the ALJ's RFC determination. In support of that finding, the ALJ found that Marburger had received only conservative treatment for both back pain and necrotizing pancreatitis, which the ALJ concluded showed that Marburger's conditions were not as severe as alleged. The ALJ also cited to Marburger's activities of daily living as inconsistent with his alleged limitations and to his admission that he bought narcotics off the street and did not stop using alcohol despite being instructed to do so to support the credibility decision. R. 20.

Because I recommend that the ALJ's decision be reversed on other grounds, I recommend that the ALJ reassess the credibility findings on remand. The ALJ did not explain why he considered treatment with morphine and other narcotic pain medication to be conservative treatment. The only activities of daily living cited in the ALJ's decision are that Marburger cares for his personal needs, prepares simple meals and cleans a little at a time. R. 20. These activities are not inconsistent with Marburger's complaints of pain and symptoms of pancreatitis. As for buying narcotics off the street and continued use of alcohol, if the Commissioner determines on remand that Marburger is disabled, she must then consider these factors to determine if they contribute to Marburger's disability. *See Doughty v. Apfel*, 245 F.3d 1274, 1278-79 (11th Cir. 2001).

## RECOMMENDATION.

For the reasons set forth above, I **RESPECTFULLY RECOMMEND** that the Court **REVERSE** the final decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and **REMAND** the case for further proceedings. I further **RECOMMEND** that the Court

direct the Clerk of Court to issue a judgment consistent with its ruling on this Report and Recommendation and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 10, 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record